BARTON v. BARTON et al.—78 S. W. (2d) 356.

Eastern Section. November 3, 1934.

Petition for Certiorari denied by Supreme Court, January 25, 1935.

Chase & Neel, of Johnson City, for appellant.
Williams, Miller & Winston, of Johnson City, for appellees.

McAMIS, J.   This suit was instituted in the chancery court at Johnson City, to administer, as insolvent, the estate of W. J. Barton, deceased.

An intervening petition was filed by Misses Edith and Ethel Barton claiming to be assignees of their aunt, Miss Eliza Barton, of two vendor's lien notes of $4,000 each, upon certain lands of deceased located in Hamblen county, Tenn., which notes they assert to be a first lien upon the property, notwithstanding a purported release of said vendor's lien notes executed by their assignor to W. J. Barton, of date March 27, 1928.

The petition alleges that said release was executed by Miss Eliza Barton only for the purpose of permitting her vendee, W. J. Barton, to subdivide the property and offer it for sale at public auction, and that, while the release is in the form of an unconditional discharge of the lien indebtedness, its delivery was conditioned upon its use by W. J. Barton only in conducting said auction sale for the purpose of raising funds to discharge said notes.

It is also alleged that the condition subject to which delivery was made had never been met; the auction sale, except as to two or three small sales, having proved abortive, and the notes consequently having never been paid.

The administratrix answered the petition, denying that said release deed was delivered subject to the conditions alleged in the petition, and alleging that it constituted an unconditional and binding discharge of said notes.

By the decree, appealed from by the administratrix, petitioners' claim was adjudged to be a first lien, the chancellor being of opinion that the release deed was conditionally delivered, that there was no consideration therefor, and that parol testimony is admissible to establish the conditions subject to which delivery was made, as well as to show failure of consideration.

The assignments of error challenge the correctness of the chancellor's holding in this respect.

The pertinent facts, developed by the testimony appearing in the record, are that W. J. Barton subdivided the property into small tracts for the purpose of conducting an auction sale, and that, realizing the necessity of satisfying purchasers in respect to the ven-

dor's lien outstanding in the name of Miss Eliza Barton, he secured the release in controversy, for the purpose of showing it to prospective purchasers with the intention of later securing a release of each individual tract sold. He so stated to the draftsmen of the release deed and to others, among them his son, who assisted in making preparation for the auction sale.

It appears that Miss Eliza Barton, at the time of the execution of the release deed, was advanced in years and was suffering from impairment of both sight and hearing and her understanding of the transaction appears to have been somewhat obscure, but she states that she understood that her brother was having a land sale from the proceeds of which she was to get the money due her.

She states, in substance, that she had no thought of discharging the lien except upon payment of her notes out of the proceeds of the sale. She further testified, and the whole record shows, that nothing was paid on said notes as a consideration for the execution of said release, either at that time or thereafter.

Strongly corroborative of petitioners' contention is the fact that the notes were not surrendered with the release deed, but for two years thereafter deceased continued to make interest payments at regular intervals which were credited upon the backs of the notes, until in 1930, all available space having been consumed in this manner, new notes were executed in substitution of the old. The new notes, as did the old, were made to recite that they were secured by vendor's lien upon property in Hamblen county, Tenn. W. J. Barton continued to make interest payments upon the substituted notes up until the time of his death, declaring that he intended to do so as long as he was able, but that if he should fail the land would stand good for the debt.

Equally persuasive is the fact that W. J. Barton did not record the release deed, it appearing that it was placed of record after his death by the administratrix. It is also shown that separate releases upon individual tracts were secured from Miss Eliza Barton, dated subsequent to the release deed here in controversy, the first of these special releases containing the following recital:

"Said trust deed (evidently referring to vendor's lien) remains in full force and effect as to the remainder of said farm, or to so much of the same, not heretofore released."

The execution of the first special release deed followed only about two months after the release deed in controversy, and, we think, evinces a clear and unequivocal intention upon the part of the releasee not to rely upon the former release deed as an unconditional release. Both the fact of the execution of the second release deed and the reservation therein of the lien, except as released by said instrument, are wholly incongruous with the theory that the release deed here

under consideration was ever intended to become unconditionally operative as such.

If competent, the proof is such as to exclude all doubt that the release deed was delivered only for the convenience of W. J. Barton in putting on the auction sale, and was to be followed later by individual releases, as was in fact done as to two or three tracts sold, and that both parties understood that it was not to become operative as a general and unconditional release.

It is well settled that parol evidence cannot be admitted to contradict the term of a written contract, and there is no occasion to cite authority to support the rule.

However, it seems equally well settled that Tennessee is definitely aligned with what is perhaps the minority view, holding that, even though delivery of a deed is shown, parol evidence is admissible to show that delivery was conditional rather than absolute. Tanksley v. Tanksley, 145 Tenn., 468, 239 S. W., 766.

In that case, Mr. Chief Justice Green announced the departure, in Tennessee, from the common-law rule, recognized in earlier Tennessee cases, that there can be no such thing as conditional delivery of a deed to the grantee, and sustained the contention of the grantor to the effect that she thought the deed was a will and gave it to the grantee for safe-keeping, to take effect upon her death.

To the same effect are Breeden v. Grigg, 8 Baxt. (67 Tenn.), 163; Smith v. Beeler, 9 Tenn. App., 190; Brady v. Isler, 9 Lea, 357; Bissenger v. Guiteman, 6 Heisk., 277.

In Breeden v. Grigg, supra, it was said:

"The rule that parol evidence is inadmissible to contradict or vary a written contract is inapplicable to cases where the contract is conditional. In such cases, parol evidence is admissible to prove the conditions, because it is only by such proof that the real character of the transaction can be developed."

The admission of parol testimony showing lack of delivery or conditional delivery does not contravene the rule against the admission of parol evidence to contradict the terms of a written contract. Where parol evidence is relied upon to show nondelivery or conditional delivery, the effect is to show that there was no contract for lack of delivery, or that it was to become binding only upon the happening of certain contingencies, while parol testimony, tending to contradict or vary the terms of the written agreement, is introduced for the purpose of showing that the contract is different, in some particular, from that solemnly expressed in the written agreement.

Rules of evidence are designed to promote justice and to foster the efficient and orderly development of truth, and to exclude evidence showing the true nature of the agreement as the parties both

understood it, and the circumstances under which, and subject to which, delivery was made, would be a subversion of the rule relied upon that parol evidence will not be admitted to contradict or vary the terms of a written contract.

To apply it to the facts of this case would be to work a positive injustice and wrong upon petitioners. It is to prevent just such an injustice and to discourage fraud that the courts of Tennessee have uniformly admitted parol testimony to show conditional delivery.

But it is insisted by learned counsel for the administratrix that the rights of third parties have intervened, and that for this reason petitioners should be denied relief, the argument being that purchasers of the tracts sold were shown the release deed and relied upon it. We do not understand that any attempt is being made to enforce the lien as against them. If so, and they were before the court, we would unhesitatingly hold their rights superior to petitioners'.

Creditors of the estate, represented in this case by the administratrix, cannot be prejudiced by the chancellor's holding, for they could not have extended credit upon the faith of the release; it never having been recorded until after the death of W. J. Barton.

We find no error in the decree, and it is affirmed, with costs, including costs of appeal to be paid out of the estate.